UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| ANNETTE F. PAYNE, | ) |
| :--- | :--- |
| | ) |
| Plaintiff, | ) |
| | ) NO. 2:16-CV-277 |
| vs. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with consent of the parties and by order of reference [Doc. 20] for disposition and entry of a final judgment. Plaintiff's Disability Insurance Benefits application under the Social Security Act, Title II, was denied after two hearings before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 21 & 23] with a supporting memorandum [Docs. 22 & 24].

**I.   APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow.  The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986).  A Court may not try the case *de novo*, resolve conflicts

in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any record evidence regardless of whether the ALJ cited it. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation is used in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.   RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.   Procedural History

In her application, Annette F. Payne ("Payne") alleged impairments she believed to be disabling with an onset date of May 16, 2013. (Doc. 13, Transcript p. 13) (reference to "Tr" and the page denote the administrative record). The claim was initially denied in October 2013 and upon reconsideration in February 2014. (*Id.*). The ALJ conducted a hearing on March 25, 2015; supplemental testimony was provided on June 26, 2015. Payne testified at each hearing and a vocational expert ("VE") testified at the supplemental hearing. (Tr. 33-62).

The ALJ utilized the five-step analysis in evaluating the claims and found several of Payne's alleged physical and mental impairments were severe. Ultimately, the ALJ made the dispositive finding that Payne was not disabled. The findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019;

2. The claimant has not engaged in substantial gainful activity since May 16, 2013, the application date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: rheumatoid arthritis; osteoarthritis; depression; anxiety; and obesity (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) except the claimant could stand and walk

3

for four houses and sit six hours, Additionally, the claimant should not climb ropes; ladders; scaffolds, but could occasionally perform postural. The claimant could occasionally reach overhead with the left upper extremity, and frequently handle and finger with the left upper extremity. The claimant should avoid concentrated exposure to hazards and extreme heat and cold. Lastly, the claimant is limited to simple routine, repetitive work with occasional contact with coworkers, supervisors and public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant . . .was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, since May 16, 2013, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-24).[1]  The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B. Evidence in the Record**

The Commissioner filed a Transcript that includes records from the disability proceedings, including medical records and opinions from treating sources, an examining consultant and state agency reviewers. The Transcript includes the ALJ's decision that offers a selective discussion of the record.  Payne's brief reviews the history, particularly the medical opinion evidence. [Doc. 22].

---

[1] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

The Commissioner's brief also reviews the record [Doc. 20, pp. 1-9].

## III. ANALYSIS

The primary issue for review is whether the Commissioner's decision is supported by substantial evidence. Payne specifically argues that the ALJ failed to properly weigh the opinions of her treating sources. Payne also urges the reports of the state agency reviewers are flawed because they were issued without the reviewers having all of her records.

### A. Weight Accorded to Treating Sources

### 1. Applicable Authority

An ALJ must adhere to certain standards in assessing evidence relating to a claim for disability benefits, including medical opinions. The applicable regulation explains that "[m]edical opinions are statements from physicians or psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and your physical and mental restrictions. 20 C.F.R. § 404.1527(2).

The "treating source" rule requires the ALJ to give controlling weight to the opinions of treating sources because:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (quoting 20 C.F.R. § 404.1527(d)(2)[2]). The ALJ must give controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in

---
[2] Now at 20 C.F.R. § 404.1527(c)(2).

5

[the] case record." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)[3]). But, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188 at *2 (July 2, 1996).

"[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." SSR 96–2p, 1996 WL 374188, at *4. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 . . . ." *Id.; see also* Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009). These factors include the length, nature and extent of the treatment relationship, exam frequency, opinion supportability and consistency with the whole record, and treating source specialization. *See Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c)(2).

The Commissioner must "always give good reasons in [the] notice of determination or decision for the weight" afforded to the opinion of the claimant's treating source. 20 C.F.R. § 404.1527(c)(2). The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5 (July 2, 1996). There are dual purposes behind this procedural requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."

---

[3] Now at 20 C.F.R. § 404.1527(c)(2).

*Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999).

The requirement also ensures meaningful review of the determination can occur. *Wilson,* 378 F.3d at 544. It exists to "ensur[e] that each denied claimant receives fair process," and thus "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinion denotes a lack of substantial evidence*,* even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).

**2.      Payne's Treating Sources**

**a.      Dr. Albertine de Wit**

In January 2010, Payne was referred to Dr. Albertine de Wit, a physician practicing internal medicine and rheumatology, for evaluation of arthritis with positive rheumatoid arthritis ("RA") factors. (Tr. 287, 476 & 478). Payne reported joint pain and swelling, among other complaints. Dr. de Wit diagnosed RA, among other conditions, and advised of the importance of treating the disease aggressively in its early stages, particularly given test results showing elevated antibody levels that could indicate a "less favorable prognosis." (Tr. 289). Dr. de Wit treated the condition with medication. (*Id.*) Payne initially made frequent follow-ups visits in which she reported a range of complaints and concerns. The visits occurred a month to several months apart. (Tr. 281-89). By March 2011, Dr. de Wit described Payne's RA as remaining "mildly active" and it was "well-controlled in November 2011." (Tr. 469, 473). Payne saw Dr. de Wit in July and September 2012 and then not again until May 2013 when she reported feeling miserable after having been off her medications due to infections treated by other providers. (Tr. 468-73, 465). Payne resumed RA medications and, by the time of her July 2013 appointment, her RA was again well-controlled. (Tr. 464, 466). Payne did not have further treatment due to the doctor's retirement.

Dr. de Witt completed a Tennessee Consolidated Retirement System "Attending

7

Physician's Report of Disability" form in July 2013. (Tr. 476). (Payne acknowledges the form relates to her employment with the state [Doc. 22, p. 17].)[4] Dr. de Wit identified Payne's diagnoses, specifically rheumatoid arthritis, primary osteoarthritis, and depression. (Tr. 476). In the small boxes provided, she gave a brief description of the x-ray findings, the limitations to Payne's range of motion and degree, and history of pain, swelling and stiffness. (*Id.*) This information was the only medical information supplied. Dr. de Wit also responded to work-related questions. Specifically, she marked that Payne's impairment prevents performance of past work and engagement in all other types of employment. (Tr. 477). Dr. de Wit did not respond to questions about the degree of improvement that can be anticipated and the amount of time required or whether the impairment had lasted or would last 12 continuous months. The form contained no requests for information regarding what a person can do despite impairments or restrictions; Dr. de Witt did not volunteer such information. (Tr. 476-77).

The ALJ's decision includes a brief review of Dr. de Wit's opinion and noted that while she gave no functional assessment, she stated the impairment prevented performance of past work and other substantial gainful employment. The ALJ gave the opinion little weight because the impact of an impairment on the ability to work is an issue reserved to the Commissioner. (Tr. 21). The ALJ also explained that Dr. De Wit's records were inconsistent with her opinion since her treatment records, particularly the July 2013 record, reflected that Payne's RA was well-controlled and imaging included a normal chest x-ray and x-rays showing only mild degenerative changes. (Tr. 21). Lastly, the ALJ noted that Dr. de Wit advised that Payne's obesity contributed to osteoarthritis and suggested she pursue weight loss. (*Id.*).

While the ALJ did not specifically discuss the length of Dr. de Witt's treating relationship

---

[4] The TCRS is a Tennessee state employee pension plan. It provides disability retirement benefits to certain qualifying employees. *See* http://treasury.tn.gov/tcrs/DisabilityBene.html.

with Payne, it is clear from his opinion that he was aware of the treating relationship and considered it when evaluating their opinions. See *Francis v. Comm'r of Soc. Sec.*, 414 F.App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider [the length of the treatment relationship and the frequency of examination], they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.").

In this case the ALJ's decision allows a clear understanding of why the ALJ discredited the treating physician's opinion. The ALJ discounted Dr. de Witt's opinion because it was inconsistent with a treatment record prepared on the same date that reflected Payne's condition was well-controlled. The same record also specified that Payne's recent x-rays showed a normal chest, mild spinal degenerative changes, and slight degenerative spurring in her AC joint and knees and compartment narrowing. (Tr. 464). The Court further observes that Payne's condition had been considered well-controlled as of November 2011, (Tr. 469), a status that is underscored by the fact that Payne did not return for follow-up appointments until July and September 2012 (when the RA remained characterized as well-controlled). She waited another several months until the May 2013 appointment when she disclosed problems with RA due to being off her medications as a result of infections. (Tr. 466-69). Once Payne resumed the medications, the condition was well-controlled as noted in Dr. de Wit's July 2013, record. Accordingly, the Court finds that the ALJ properly applied the treating physician rule and explained good reasons for the little weight that he gave to his opinion.

**b.    Dr. Jaime Oakley**

The medical history contains records of care with Dr. Jaime Oakley, a family practice physician, from January 2010 to March 2015. Dr. Oakley referred Payne to Dr. de Witt in 2010 for evaluation and treatment of arthritis. (Tr. 456). He also provided the routine care expected of

a family practice physician along with prescribing medications for Payne's mental conditions and treating her RA after Dr. de Wit's retirement. Payne saw Dr. Oakley for a range of complaints, including pain, headaches, sinus and congestion issues, depression, anxiety and insomnia. Dr. Oakley routinely listed up to 20 active problems from which Payne suffered and 10 or more medications with which she was prescribed. Payne's records do not paint a picture of good health.

Dr. Oakley completed a TCRS "Attending Physician's Report of Disability" form in February 2014. (Tr. 575-78). He listed Payne's primary impairment diagnoses as "RA/fibromyalgia – chronic pain," with secondary impairments of "chronic major depression – irritability, fatigue." (Tr. 576). With regard to medical conditions, Dr. Oakley indicated Payne has a history of joint stiffness, diffuse arthralgias and myalgias. (*Id.*) With regard to mental conditions, the form requested information about impairment of memory and judgment and ability to perform calculations. Dr. Oakley noted that Payne has problems with concentration and lacks motivation and energy. (Tr. 577). In response to a request about reduction of daily activities, interests, personal habits and ability to relate to others, he wrote "irritability, anxiety, problems dealing with others especially under stress." (*Id.*). Dr. Oakley opined that Payne does not demonstrate the ability to relate to and communicate with supervisors and co-workers in a work situation. Dr. Oakley ultimately addressed Payne's prognosis and its effect on her ability to work. He felt the degree of improvement that can be anticipated with treatment and the time for improvement were indeterminate given the chronic and progressive nature of RA. (Tr. 578). Dr. Oakley recorded that the condition is expected to last 12 months, has prevented past work and prevents engagement in all other gainful employment. (*Id.*)

The ALJ gave the opinion little weight because the impact of an impairment on the ability to work is an issue properly reserved to the Commissioner. (Tr. 21). The ALJ also discounted Dr. Oakley's opinion because "the claimant's treating records indicate that TA is stable on medication

10

in March 2015…." (Tr. 21). The ALJ noted that Payne's post-bariatric surgery weight loss would continue to result in improvement in her joint problems. The ALJ's decision does not address Dr. Oakley's mental health opinions.

Treatment records in the year prior to March 2015 contain numerous references to Payne experiencing hand pain, tingling and numbness, persistent pain in her legs and feet, numbness in her feet, and joint pain. (Tr. 597, 607, 611, 875). That her RA is "stable" is ambiguous. In *Gabriel v. Berryhill*, the court noted a similar problem with reading too much into this term.

> [T]hat Plaintiff was often noted to be stable with medication does not provide a reasonable basis for placing little weight on Dr. Fitz's opinions. Plaintiff correctly points out that the term "stable" indicates only a lack of change over time. The term is relative to the particular circumstances in which it is used. Without some evidence or explanation of these circumstances, a person who is medically "stable" could range from a[n] unhealthy person who is extremely limited or to a healthy person with no limitations. The ALJ read the word "stable" as closer to the latter, meaning someone more able to perform work than Dr. Fitz believed. This was not a reasonable reading of the term "stable" because the ALJ did not connect the word "stable" to the level of asperities, or lack thereof, in Plaintiff's mental health. This, in turn, was not a reasonable ground for discounting treating specialist Dr. Fitz's opinions.

*Gabriel v. Berryhill*, No. 3:17-CV-00004, 2018 WL 1224517, at *5 (S.D. Ohio Mar. 9, 2018). If the ALJ had connected the term to the degree of symptoms Payne was experiencing prior, the Court would have some reference point in reviewing the basis for discounting Dr. Oakley's opinion.

The ALJ also attempts to support the weight accorded to Dr. Oakley by noting that Payne was losing weight after having bariatric surgery and this would "continue to improve joint problems." (Tr. 21). While weight loss was recommended by Payne's doctors to assist with her conditions, the ALJ's conclusion as to the effect of weight loss bears little relationship to the § 404.1527 factors. A more thorough review of the § 404.1527 factors is in order in regard to Dr. Oakley's opinion.

11

**c.     Dr. Heather Gow**

Payne became a patient of psychologist Heather Gow in 2012. (Tr. 483-84). She was referred to her again in May 2013. Dr. Gow continued to treat Payne as of March 2015. (Tr. 845). Dr. Gow identified her diagnostic impression as dysthymic disorder with major depressive disorder (moderate recurrent), along with issues of chronic pain, difficulty maintaining work consistency and productivity, and financial stressors. (Tr. 484). Payne was taken to the ER by her father a month after her initial appointment with Dr. Gow due to emotional distress; she was discharged home. (Tr. 328-30, 480).

Dr. Gow saw Payne in approximately eighteen sessions from May 2013 to March 2015. (Tr. 479-87, 526-29, 845-858). Payne was frequently tearful or dysphoric and often complained of difficulty sleeping, chronic pain and fatigue. (*See* Tr. 479, 528, 848, 850, 853, 855, 856). Relationship difficulties with her partner were a frequent stressor. (Tr. 529, 854-55). Grief over a family member's death and loss of friendships were occasional issues of concern (Tr. 526-27).

In March 2014, Payne was taken to the hospital by ambulance for suicidal thinking and planning. (Tr. 549, 852, 854). She resumed treatment with Dr. Gow after this incident with continued focus on relationship difficulties, chronic pain, new medical complaints, and weight loss and bariatric surgery in the sessions through March 2015. (Tr. 848, 849, 850, 853, 854). Per the notes from the last appointment in the record, Payne continued to report excessive fatigue, discomfort and relationship instability. (Tr. 845).

Over the course of treatment, Dr. Gow provided two opinion reports. Her first report, which is not referenced in the ALJ's decision, was prepared on August 12, 2013, using a state disability determination form. (Tr. 859-60). Dr. Gow noted she had been seeing Payne for three months and diagnosed adjustment disorder, dysthymic disorder, and major depressive disorder. (Tr. 859). She wrote that Payne had not improved with treatment, her depressive symptoms had

worsened, and she was expressing suicidal thoughts. (*Id.*) Payne was prescribed Seroquel and Wellbutrin. (*Id.*)

Dr. Gow opined about work capacity and limitations. She felt Payne cannot remember and carry out simple, 1-2 step instructions and maintain a routine without frequent breaks for stress related reasons. (Tr. 860). Dr. Gow believed Payne cannot maintain socially appropriate behavior, respond appropriately to normal stress and routine changes, care for herself and maintain independence in daily living tasks on a sustained basis, or maintain a work schedule without missing frequently due to psychological issues. (*Id.*) Dr. Gow noted Payne had moderate impairment in memory, concentration, and social ability. (*Id.*)

Dr. Gow prepared a second report in March 2015. (Tr. 589). She again diagnosed major depressive disorder and noted issues with relationships, grief, pain management and finances. (Tr. 589). She evaluated limitations for purposes of residual functional capacity and found no or mild limitations in areas of understanding and memory and mild to moderate limitations in all but one area of sustained concentration and persistence. (Tr. 592). The exception was a finding of marked limitation in the ability to finish a normal work day and week without interruptions from psychological symptoms and to perform at a consistent pace without unreasonable rest periods. (*Id.*) As for social interaction, Dr. Gow identified mild limitations in Payne's ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; she found a moderate limitation in the ability to accept instructions and respond appropriately supervisor criticism. (*Id.*). For adaption, Dr. Gow opined that Payne has marked limitation in the ability to travel to unfamiliar places or use public transport, set realistic goals, make plans independently, and tolerate normal stress levels. (*Id.*). She concluded that Payne's impairment will substantially interfere with her work ability on a regular, sustained basis, that she would need to miss work each month half of the time. (Tr. 593).

The majority of the ALJ's discussion of Dr. Gow is a summary of her opinions, with the remainder devoted to an analysis of the Dr. Gow's global assessment of functioning scores. The two final sentences address the weight accorded to the opinions. (Tr. 22). He gave "some weight" to the opinions generally, but little weight to the opinion that Payne is markedly impaired and could not work on a regular, sustained basis. The stated basis for the some/little weight accorded is that "no treatment record shows the claimant is that limited" and that while the records indicate depression due to physical health and some financial concerns, "the majority of the records center on the claimant's personal relationships." (*Id.*)

The ALJ failed to address the factors mandated by § 404.1527. The ALJ asserts that no record shows Payne is "that limited" is not sufficient alone to discount Dr. Gow's opinion. The Court notes that Payne sought care at an emergency room in August 2013 due to depression and a panic attack. (Tr. 328) She was admitted to a hospital for several days in March 2014 due to her mental health problems, including suicidal ideations. (Tr. 544). There may be good reasons for discounting Dr. Gow's opinion that Payne was markedly limited regarding her ability to work on a regular sustained basis. It just is not contained in the decision.

**B.     Record Reviewed by State Agency Reviewers**

Payne asserts that the ALJ's reliance upon the state agency reviewers' opinions is misplaced because the October 2013 and February 2014 opinions were issued well prior to the hearing and without the benefit of the extensive medical records that accumulated thereafter.

While Payne is correct that the state agency reviewers do not have the entire record before them, the ALJ had the complete record as discussed in his decision. Further, the ALJ may rely upon a state agency reviewer opinion even if the reviewer did not review the entire record if the ALJ considers the evidence post-dating the reviewer opinions. *See McGrew v. Comm'r. of Soc. Sec.*, 343 F.App'x 26, 32 (6th Cir. 2009); *Ruby v. Colvin*, 2015 WL 1000672, *4 (S.D. Ohio)("[S]o

long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion."). The ALJ reviewed the record as a whole, including significant number of medical records that accumulated after the opinions. (Tr. 18-21). The ALJ then utilized his discretion in choosing to afford great weight to both state agency reviewers' medical opinions. As a result, the undersigned finds no error relative to the ALJ relying upon opinions of the state agency reviewers in conjunction with his own review of the subsequent medical records.

## IV. CONCLUSION

Accordingly, Plaintiff's motion for judgment on the pleadings [Doc. 21] is GRANTED, the Defendant's motion for summary judgment [Doc. 23] be DENIED. This Court REMANDS pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED:

s/ Clifton L. Corker  _____
UNITED STATES MAGISTRATE JUDGE